UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JESSENIA POLANCO,                                            :
                                                             :
                                Plaintiff,                   :     **MEMORANDUM DECISION AND**
                                                             :     **ORDER**
        - against -                                          :
                                                             :     25-cv-5815 (BMC)
NEW YORK CITY SCHOOL                                         :
 CONSTRUCTION AUTHORITY,                                     :
                                                             :
                                Defendant.                   :
                                                             :
------------------------------------------------------------ X

**COGAN**, District Judge.

        Plaintiff, a Hispanic woman from the Dominican Republic, alleges that her supervisor at

the New York City School Construction Authority ("SCA") frequently disparaged Dominican

employees, mocked plaintiff's accent, and criticized plaintiff's ability to write in and speak

English.  Months after her supervisor's comments subsided, plaintiff complained of

discrimination and harassment to SCA's internal Equal Employment Opportunity office

("internal EEO"); a year after that, she filed a complaint with the Equal Employment

Opportunity Commission ("EEOC").  Plaintiff was ultimately fired.

        Plaintiff now brings claims for national origin discrimination, hostile work environment,

and retaliation under Title VII, the New York State Human Rights Law ("NYSHRL"), and the

New York City Human Rights Law ("NYCHRL").[1]  In addition, plaintiff brings claims for

---

[1] Accent is not an independent protected category under Title VII, the NYSHRL, or the NYCHRL.  However,
"accents are perhaps the most recognizable indication of one's national identity, and accent and national origin are
obviously inextricably intertwined in many cases."  Pibouin v. CA, Inc., 867 F. Supp. 2d 315, 324 (E.D.N.Y. 2012)
(internal quotation marks and citations omitted). The Court therefore analyzes plaintiff's accent and national origin
discrimination claims together.

disability discrimination under the NYSHRL and NYCHRL based on SCA's refusal to provide her with a reasonable accommodation after she was diagnosed with functional neurological disorder ("FND").

Before the Court is defendant's motion to dismiss.  Defendant's motion is granted in part and denied in part as set forth below.

## SUMMARY OF AMENDED COMPLAINT

Plaintiff began working for SCA in August 2010 as an Administrative Assistant and was promoted to Senior Program Coordinator in 2015.  In the latter position, she coordinated citywide programs, ensured projects were appropriately funded and scheduled, and liaised between her department and the Operations Department as well as other New York City agencies and departments.  For most of plaintiff's career at SCA, she received performance evaluation grades of "Meets Expectations" or "Exceeds Expectations."

In January 2022, Diana Mendez became plaintiff's supervisor.  It appears that plaintiff did not experience issues with Mendez until October 11, 2023, when Mendez "publicly mocked [p]laintiff's accent in front of [p]laintiff and her colleagues."[2]  Then, from October 2023 through December 2024 (fourteen months), Mendez would:

- on a monthly basis, tell plaintiff that "Dominican employees do not communicate properly," that "Dominican employees make too many mistakes," and that "Dominican employees cannot write or speak English";

- on a monthly basis, say that plaintiff's Dominican peers were incompetent and should not be in management positions;

- on a weekly basis, tell plaintiff's colleagues that she excluded plaintiff from meetings because she could not write in or speak English;

---

[2] In plaintiff's complaints to the internal EEO and EEOC (which defendant submits with its motion to dismiss), plaintiff says that on October 11, 2023, Mendez criticized plaintiff in front of a colleague for not knowing how to write in English after she misspelled words in meeting notes.

- on a weekly basis, publicly mock plaintiff's accent at meetings; and

- on a weekly basis, tell plaintiff that she did not know how to write in or speak English in front of plaintiff's colleagues.

Plaintiff maintains that her prior supervisors never complained about her accent, and that her accent did not impair her ability to perform her job responsibilities – including writing in English.

Plaintiff believes that Mendez's behavior harmed her physical and mental health. In December 2023, plaintiff was hospitalized and diagnosed with Functional Neurological Disorder, a debilitating condition that impairs plaintiff's mobility and ability to speak. Although plaintiff alleges, and her neurologist opines, that the disorder was triggered by Mendez's behavior, plaintiff received this diagnosis only one month after Mendez's behavior purportedly began.

Plaintiff submitted a request for reasonable accommodation a month after receiving her diagnosis. She does not indicate what accommodation she requested but notes that this accommodation would have enabled her to effectively accomplish all of her job responsibilities. SCA denied plaintiff's request.

On July 29, 2024, plaintiff submitted a complaint to SCA's internal EEO regarding Mendez's conduct which, by plaintiff's account, had ended over seven months earlier. The internal EEO investigated her complaint and determined that it was unfounded. However, it is plaintiff's belief that the internal EEO could not have independently investigated her claim because it reported directly to the SCA President, who is a close friend of Mendez.

In response to plaintiff's internal complaint, Mendez "increased her hostility" towards plaintiff and gave plaintiff a negative performance evaluation for the period of July 2024 through March 2025. In fact, Mendez gave plaintiff the lowest possible score for "site visits," which had

3

never been one of plaintiff's job responsibilities.  Mendez also placed plaintiff on a performance improvement plan ("PIP"), which is SCA's first step towards terminating an employee.

On July 24, 2025, plaintiff filed a charge of discrimination with the EEOC, alleging discrimination on the basis of her national origin and disability as well as retaliation for her complaints.  That same day, the EEOC issued plaintiff a Notice of Right to Sue, apparently without investigating plaintiff's allegations.  In August 2025, SCA terminated plaintiff for poor performance.

## DISCUSSION

### I.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

### II.    National Origin Discrimination

"Title VII [] requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).  To satisfy the first element, a plaintiff must allege that her employer took an adverse employment action against her. Id.  As the Supreme Court clarified in Muldrow v. City of St. Louis, 601 U.S.

4

346, 355 (2024), a plaintiff "does not have to show ... that the harm was significant[ ] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." (Internal quotation marks and citation omitted). Instead, a plaintiff need only show "some harm respecting an identifiable term or condition of employment." Id. To satisfy the second element, a plaintiff must allege that her race, color, religion, sex, or national origin was a "substantial" or "motivating" factor contributing to the employer's decision to take the adverse action. Vega, 801 F.3d at 85.

Plaintiff's allegations that Mendez mocked her accent, criticized her ability to write in and speak English, and made disparaging comments about Dominican employees are sufficient to infer Mendez's discriminatory intent. But that's only half of the equation. To sustain her Title VII claim, plaintiff must connect Mendez's discriminatory intent to an adverse action. Although being excluded from meetings and embarrassed in front of one's colleagues are undoubtedly negative experiences, they are not legally cognizable adverse actions. See Kurian v. Forest Hills Hosp., 962 F. Supp. 2d 460, 470 (E.D.N.Y. 2013); Walia v. Napolitano, No. 11-cv-2512, 2017 WL 10378189, at *10 (E.D.N.Y. Dec. 4, 2017).

It's worth noting that plaintiff also alleges that she received a negative performance evaluation, was placed on a PIP, and was ultimately terminated. As the Court explains below in Section IV, the negative performance evaluation and PIP were not adverse employment actions, but the termination certainly was. Notwithstanding, paragraphs 37 through 44 of the amended complaint make explicitly clear plaintiff's view that the negative performance evaluation, PIP, and termination resulted from Mendez's *retaliatory* animus following plaintiff's July 2024 internal complaint. Indeed, that section of the amended complaint is titled, "Retaliation." That plaintiff "allege[s] a stew of discriminatory animus" by Mendez "does not impart flavor to every

5

disciplinary action taken against [p]laintiff[] and thereby transform those actions, even if unjustified, into discriminatory adverse employment actions." See Fukelman v. Delta Air Lines, Inc., No. 18-cv-00002, 2020 WL 2781662, at *3 (E.D.N.Y. May 29, 2020).  The Court is not going to infer that SCA's termination of plaintiff was discriminatory based solely on Mendez's alleged conduct that ended eight months earlier, especially when plaintiff says that the termination was retaliatory.  Thus, plaintiff's national origin discrimination claim under Title VII is dismissed.

Plaintiff nonetheless states a claim for national origin discrimination under the NYSHRL and NYCHRL.  Under the NYSHRL and NYCHRL, it is enough that a plaintiff alleges that she was "treated less well at least in part because of" her national origin.  Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (citations omitted).  Plaintiff's allegations that Mendez demeaned Dominican employees, excluded plaintiff from meetings because of her negative view of Dominican employees, and mocked plaintiff's accent and ability to write in and speak English amount to "less well" treatment based "at least in part" on plaintiff's national origin.  See, e.g., Lee v. Riverbay Corp., 751 F. Supp. 3d 259, 279 (S.D.N.Y. 2024) ("incessant insults" directed toward plaintiff personally and based on his race, color, and national origin were more than "petty slights or trivial inconveniences").

### III.    Hostile Work Environment

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [national origin]." Patane

6

v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).

"Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "Ultimately, ... a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, and [the Second Circuit has] repeatedly cautioned against setting the bar too high." Id. (internal quotation marks and citation omitted) (cleaned up).

As the basis for her hostile work environment claim, plaintiff alleges that Mendez, for fourteen straight months, made disparaging comments about Dominican employees, told plaintiff's colleagues that she excluded plaintiff from meetings because she could not write in or speak English, and mocked plaintiff's accent. In summary, plaintiff alleges a continuous barrage of negative comments and mistreatment related to her national origin. At the pleadings stage, these allegations are enough for a hostile work environment claim under Title VII.[3] Because the NYSHRL and NYCHRL standards are less strict, plaintiff's hostile work environment claims

---

[3] Defendant argues that plaintiff failed to exhaust her administrative remedies with respect to certain allegations because she did not raise those allegations in her EEOC complaint. Claims not asserted before the EEOC may be pursued in a subsequent federal court action if the claims are "reasonably related" to those filed with the EEOC – that is, if they "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Richardson v. Suffolk Bus Corp., No. 09-cv-3586, 2010 WL 2606266, at *6 (E.D.N.Y. June 22, 2010) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 177 (2d Cir. 2005)). It is true that the amended complaint alleges, for the first time, that Mendez made comments reflecting a bias against Dominicans. And it is certainly odd, perhaps incredible, that plaintiff would not mention these comments in her EEOC complaint if Mendez did, in fact, utter them. Notwithstanding, plaintiff's EEOC complaint states that she "experienced persistent discrimination and public humiliation" from Mendez beginning in October 2023 based on her national origin. The subsequent EEOC investigation, if one were to occur, would reasonably include an investigation into Mendez's conduct leading up to the filing of the EEOC complaint.

under those statutes survive as well.  Pullman v. Collins, No. 24-cv-1383, 2025 WL 2673807, at *16 (S.D.N.Y. Sept. 18, 2025).

One point of clarification is necessary: to the extent that plaintiff is bringing hostile work environment claims based on her disability, those claims are dismissed.  "[D]enials of reasonable accommodations alone cannot sustain a hostile work environment claim."  Santana v. Mount Vernon City Sch. Dist./Bd. of Educ., No. 20-cv-3212, 2023 WL 2876653, at *12 (S.D.N.Y. Apr. 7, 2023).  Plaintiff's standalone allegation that she was denied a reasonable accommodation does not allow the Court to infer that the allegedly hostile work environment was based in any part on plaintiff's disability.  See id.

## IV.    Retaliation

For a retaliation claim to survive a motion to dismiss, a plaintiff need only "plausibly allege that: "(1) defendants discriminated – or took an adverse employment action – against [her], (2) because [s]he has opposed any unlawful employment practice."  Vega, 801 F.3d at 90 (internal quotation marks and citation omitted).  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  Id. (quoting Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).  Under the "more lenient" NYSHRL and NYCHRL pleading standards, a plaintiff can survive a motion to dismiss if she "show[s] that something happened that was reasonably likely to deter a person from engaging in protected activity."  Moore, 722 F. Supp. 3d at 247 (citation omitted).

Plaintiff engaged in two protected activities: (1) her July 2024 complaint to the internal EEO and (2) her July 2025 complaint to the EEOC.  Plaintiff fails to state a claim for retaliation under any standard with respect to the internal EEO complaint because she fails to tie the

8

complaint to a negative consequence.  She says that Mendez "increased her hostility" towards her after she filed her internal complaint, but the Court doesn't know what that means.  And although Mendez gave plaintiff a negative performance evaluation and placed her on a PIP, she didn't do so until at least March 2025, eight months later.  Although a plaintiff may establish retaliatory animus "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, ... the protected activity and adverse action must occur very close together."  Sealy v. State Univ. of New York at Stony Brook, 834 F. App'x 611, 614 (2d Cir. 2020) (internal quotation marks and citation omitted).  In the absence of circumstantial evidence of retaliatory animus, eight months is far too great a separation to allow the Court to infer a causal connection between the internal complaint and the negative performance review and PIP. See id. ("[A]dverse employment actions occurring approximately three months after protected activity are too attenuated to give rise to an inference of retaliation.").  Besides, for Title VII purposes, a negative performance review and PIP are not adverse employment actions.  McGrath v. Thomson Reuters, No. 10-cv-4944, 2012 WL 2119112, at *11-12 (S.D.N.Y. Apr. 30, 2012), report and recommendation adopted, No. 10-cv-494, 2012 WL 2122325 (S.D.N.Y. June 12, 2012), aff'd, 537 F. App'x 1 (2d Cir. 2013).

By contrast, plaintiff was fired a month after filing her EEOC complaint; the complaint and the adverse action are sufficiently close in time to infer causation.  Defendant counters that plaintiff's termination was the result of progressive discipline that began before plaintiff filed her EEOC complaint.  This argument is built on a false premise: that plaintiff received *progressive* discipline.  Plaintiff was issued a negative performance review and PIP months earlier.  As plaintiff states and defendant repeats, the PIP was the "first step" towards termination.  Plaintiff does not allege any other steps.

9

The Court also rejects defendant's argument that plaintiff failed to allege that SCA or any individual was aware of her EEOC charge after she filed it. It's true that the amended complaint does not explicitly say that SCA knew about plaintiff's EEOC complaint and does not contain any "facts that could support an inference of corporate knowledge." See Hunt v. Consol. Edison Co. of New York, Inc., No. 18-cv-7262, 2021 WL 3492716, at *10 (E.D.N.Y. Aug. 9, 2021). Further, based on the EEOC's Notice of Right to Sue (which defendant filed with its motion), it appears that the EEOC didn't investigate plaintiff's dispute. Thus, the Court cannot presume, as it typically does, that the employer had knowledge of the EEOC charge "because the EEOC responds to charges of discrimination by investigating the incident with the employer." See Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 223 (E.D.N.Y. 2014). But the Notice of Right to Sue settles the debate: on its second page, it shows that SCA and its internal EEO Director were CC-ed. The Court thus finds no reason to doubt SCA's knowledge at this stage.

The Court dismisses plaintiff's retaliation claims based on the internal complaint only.

## V.    Disability Discrimination

Plaintiff brings her disability discrimination claims under the NYSHRL and NYCHRL under a failure-to-accommodate theory. See Gahfi v. New York City Dep't of Educ., No. 23-cv-1782, 2025 WL 675933, at *9 (E.D.N.Y. Feb. 28, 2025) (explaining that disability discrimination claims may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation). To state a failure-to-accommodate claim under the NYSHRL and NYCHRL, plaintiff must plead that: "(1) [she is a person] with a disability under the meaning of the statutes; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. Id. (citation omitted).

10

Defendant first argues that plaintiff does not allege that she has a disability, "other than stating a diagnosis following a hospitalization in December 2023." Sure, the amended complaint does not explicitly say, "Plaintiff has a disability." But the Court sees no reason to demand more detail on this point. The NYSHRL defines "disability" as, among other things, "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function. New York Exec. Law § 292(21)(a). The NYCHRL defines disability as, among other things, "any physical, medical, mental or psychological impairment." New York City Admin. Code § 8-102. Plaintiff says that she was diagnosed with FND, a "debilitating condition that impairs [her] mobility and ability to speak." Plaintiff's condition clearly fits the bill for disability under both the NYSHRL and the NYCHRL.

Nevertheless, plaintiff's failure-to-accommodate claims ultimately fail on another basis. In support of the third element, plaintiff asserts only that she "would have been able to effectively accomplish all of her job responsibilities had [SCA] approved [her] request for reasonable accommodations," and hints that the accommodation she requested was the ability to work remotely ("Plaintiff had received positive performance evaluations during the COVID-19 pandemic when [she] worked remotely."). She does not, however, identify the essential functions of her job (as opposed to her broad responsibilities) or plausibly allege that working remotely would have allowed her to perform those essential functions. Plaintiff's allegations are conclusory, and do not suffice to state a claim. See, e.g., Lewis v. R.L. Vallee, Inc., No. 24-1438, 2025 WL 1077412, at *2 (2d Cir. Apr. 10, 2025) (affirming dismissal of failure-to-accommodate claim where plaintiff "d[id] not explain what specific accommodation he sought, how that accommodation would have allowed him to perform essential job functions, or how

11

[defendant] denied him such an accommodation); <u>Stanley v. Phelon</u>, No. 23-731, 2024 WL 1453872, at *5 (2d Cir. Apr. 4, 2024) (affirming dismissal of failure-to-accommodate claim where plaintiff "d[id] not describe the particulars of his responsibilities" such that the court "could draw the inference that he could perform his job at home").

Plaintiff wants the Court to assume that because she worked from home "successfully" during the pandemic, she must have been able to perform her essential job functions at home. Even if the Court were to make this assumption (which is doubtful, because expectations were obviously lower during the pandemic), the amended complaint is devoid of any allegations that plaintiff could have continued to perform all the essential functions of her job post-pandemic. <u>See</u> <u>Cangro v. New York City Dep't of Fin.</u>, No. 23-cv-10097, 2024 WL 3833971, at *6 (S.D.N.Y. Aug. 14, 2024); <u>see also</u> <u>Zuckerman v. GW Acquisition LLC</u>, No. 20-cv-8742, 2021 WL 4267815, at *12 (S.D.N.Y. Sept. 20, 2021) ("Plaintiff, like millions of other employees, was initially allowed to work from home because of the COVID-19 pandemic; Plaintiff alleges no facts from which the Court could infer that she could perform the essential functions of her job from home after her colleagues and other work contacts returned to their offices.").

Plaintiff's disability discrimination claims under the NYSHRL and NYCHRL are thus dismissed.

## CONCLUSION

Plaintiff's Title VII national origin discrimination claim is dismissed; plaintiff's retaliation claims based on her internal complaint are dismissed; and plaintiff's disability-related claims are dismissed.  Plaintiff's national origin discrimination claims under the NYSHRL and

NYCHRL survive; plaintiff's hostile work environment claims (predicated on national origin) survive; and plaintiff's retaliation claims based on her EEOC complaint survive.

**SO ORDERED.**

_Brian M. Cogan_

U.S.D.J.

Dated: Brooklyn, New York
       March 2, 2026

13