**C/M**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESENIA POLANCO,<br><br>Plaintiff,<br><br>- against -<br><br>NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY,<br><br>Defendant. | **CORRECTED MEMORANDUM DECISION AND ORDER**<br><br>25-cv-5815 (BMC) |

**COGAN**, District Judge.

Following her termination, plaintiff Jesenia Polanco brought the instant lawsuit against her former employer, New York City School Construction Authority ("SCA"), alleging that SCA subjected her to discriminatory and harassing treatment based on her disability and national origin, and retaliated against her for complaining about her mistreatment. The Court granted in part SCA's motion to dismiss, and, in doing so, significantly narrowed plaintiff's case. A few weeks later, while discovery was underway, plaintiff's counsel withdrew. Plaintiff ultimately elected to proceed *pro se*.

Before the Court is SCA's motion for summary judgment on plaintiff's remaining claims, which include hostile work environment claims under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); national origin discrimination claims under the NYSHRL and NYCHRL; and retaliation claims – based only on plaintiff's charge to the Equal Employment Opportunity Commission ("EEOC") – under Title VII, the NYSHRL, and the NYCHRL. Summary judgment is granted to SCA on plaintiff's

federal claims. The Court dismisses the NYSHRL and NYCHRL claims without prejudice to refiling in state court.

**BACKGROUND**

Plaintiff began working for SCA in 2010 as an Administrative Assistant and was promoted to Senior Program Coordinator in 2015.[1] A requirement of the latter position was that plaintiff participate in meetings in English and review/write comments on scopes of work and design drawings in English.

In January 2022, Diana Mendez became Director of Operations and plaintiff's supervisor. Mendez and plaintiff started butting heads at least as early as March 2023, with Mendez flagging issues with plaintiff's performance and plaintiff requesting to be reassigned to a different supervisor. Once in March 2023 and twice in May 2023, plaintiff met with Mendez and Cora Liu, Mendez's supervisor, to, in plaintiff's words, "mediate the situation between [Mendez] and me." Plaintiff requested to be reassigned as chief of staff to Liu, but Liu declined her request. Apparently, nothing of note happened for the next several months.

During a meeting on October 11, 2023, plaintiff shared a spreadsheet with Mendez that contained two misspelled words. After the meeting, Mendez told plaintiff, in front of a coworker, that plaintiff could no longer take notes in meetings because Mendez believed that plaintiff did not know how to write in English.

Plaintiff resigned from SCA two months later (again, it seems that nothing of note happened in the interim). However, after her resignation, plaintiff was diagnosed with

[1] Plaintiff says that she was not promoted until 2021. However, the documents on which she relies for that assertion don't say that. In fact, the amended complaint – one of the documents to which she cites – says that she was promoted in 2015.

Functional Neurological Disorder. Plaintiff thus rescinded her resignation to keep her health insurance, knowing she would return to work under Mendez.

On January 5, 2024, now back at SCA, plaintiff met with Jared Herst in Human Resources. In an email memorializing their conversation, plaintiff complained of three negative incidents with Mendez:

- In September 2022, Mendez loudly reprimanded plaintiff about a mistake that plaintiff had made in a file.
- In October 2023, Mendez yelled at plaintiff in front of a coworker for misspelling a word at a meeting. After that, plaintiff was no longer allowed to take notes in meetings.
- In October 2023, Mendez asked plaintiff to work overtime for a week. When plaintiff later submitted her timesheet, Mendez told her that she would not approve overtime for two of the days that plaintiff worked overtime.

After recounting these incidents, plaintiff expressed frustration that her bosses were continuing to give her work that involved conducting meetings and writing despite repeatedly telling her that she could not speak or write English. She concluded that she felt discriminated against because of her language barrier. As a result, she requested that she be moved to a different department and that Mendez be held accountable. Neither party says what came of this complaint, if anything.[2] However, it is clear from the record that plaintiff continued working under Mendez.

Toward the end of July 2024, plaintiff submitted a complaint about Mendez to SCA's Equal Employment Opportunity office ("EEO").[3] In this complaint, plaintiff charged Mendez

---

[2] As set forth in Discussion Section III, *infra*, neither party considers this complaint to be protected activity for purposes of plaintiff's retaliation claim, and so the Court will not consider it as such. Regardless, it is not protected activity. Protected activity must be "sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." Arkorful v. N.Y.C. Dept. of Educ., 712 F. Supp. 3d 336, 356, (E.D.N.Y. Jan. 24, 2024) (internal quotation marks and citation omitted). Plaintiff cannot simply say that she was discriminated against and make it so, particularly given that the incidents alleged in plaintiff's email had not even a tinge of discriminatory animus. Additionally, discrimination based on a "language barrier" is not prohibited conduct under Title VII.

[3] For reasons set forth in Discussion Section III, *infra*, neither party considers this complaint to be protected activity for purposes of plaintiff's retaliation claim, and so the Court will not consider it as such. Regardless, it is not protected activity. Plaintiff checked the boxes for national origin discrimination and sexual harassment, but she did not allege any facts substantiating such mistreatment. The only incident that plaintiff described in the complaint was

with sexual harassment and national origin discrimination, and described the October 11, 2023 incident in which Mendez told her that she did not know how to write in English. SCA did not complete its investigation until March 4, 2025, when it informed plaintiff that there was "insufficient credible and corroborating evidence" of discrimination.

Sometime in 2024, Mendez issued plaintiff a performance review for July 2023 through June 2024 ("2023-2024 Review"). Mendez gave plaintiff an overall rating of "meets expectations," and placed her on a performance improvement plan ("PIP"). Pursuant to the PIP, plaintiff was required to meet several goals by February 4, 2025. Plaintiff rebutted the 2023-2024 Review on multiple bases, but Mendez declined to alter it.

On January 23, 2025, Mendez emailed plaintiff that her PIP would be extended through March 4, 2025; Mendez advised plaintiff to "use this extended time to focus on the areas for improvement and reach out for support or guidance as required." Plaintiff responded that she appreciated the opportunity to continue improving.

On March 28, 2025, Mendez issued plaintiff a performance review for July 2024 through March 5, 2024 ("2024-2025 Review"). Mendez gave plaintiff an overall rating of "needs improvement," and extended the PIP for a second time. Plaintiff was again required to meet certain goals by the PIP deadline, which was now May 27, 2025. That day, Mendez and Liu communicated the results of plaintiff's evaluation to her and told her that failure to satisfy the requirements of the PIP could result in her termination. As with her 2023-2024 Review, plaintiff rebutted her 2024-2025 Review on multiple bases, but Mendez declined to alter it.

---

the October 11, 2023 incident where Mendez questioned plaintiff's English language skills. But plaintiff did not say that this comment was based on her national origin or sex. In fact, plaintiff did not even identify her national origin or sex.

In April 2025, plaintiff submitted a second complaint to SCA's EEO, now naming both Mendez and Liu as respondents. In this complaint, plaintiff charged Mendez and Liu with disability discrimination, national origin/ethnicity discrimination, and sexual harassment. She alleged that the 2024-2025 Review and PIP were discriminatory as well as retaliatory in response to her first internal complaint. SCA investigated the complaint but did not complete its investigation until December 22, 2025, after plaintiff's termination. It found plaintiff's complaint to be unsubstantiated.

On May 1, 2025, Mendez emailed plaintiff that she was not fulfilling the requirements of her PIP, including: submitting daily work logs, scheduling weekly check-ins with her manager, asking for clarification when tasks were unclear, improving attention to detail and meeting quality standards more consistently, and proactively scheduling or reporting on required site visits. Plaintiff responded to the email a few days later, acknowledging that these PIP items remained outstanding and asking for some leeway on the site visits requirement due to her medical condition. Over the next several weeks, Mendez continued to flag deficiencies in plaintiff's work and unmet PIP items.

On May 21, 2025, plaintiff informed SCA that on May 16, she filed a charge with the EEOC and New York State Division of Human Rights ("NYSDHR"), alleging disability discrimination, failure to accommodate, retaliation, and hostile work environment.[4] Meanwhile, plaintiff failed to satisfy the PIP requirements by the May 27, 2025 deadline. Thus, on June 5, 2025, SCA contacted plaintiff's union requesting a meeting to discuss plaintiff's termination.

[4] Confusingly, the charge is dated July 24, 2025, but plaintiff correctly identified the charge number in her May 21, 2025 email, which suggests that she did, in fact, file the charge in May 2025.

Before SCA could complete plaintiff's termination, plaintiff went on approved FMLA leave. On July 24, 2025, while out on leave, SCA was notified of plaintiff's charge with the EEOC and NYSDHR. Relevant here, plaintiff's allegations in that charge with respect to national origin-related discrimination and harassment were confined to the October 11, 2023 incident – *i.e.*, that Mendez told her that she did not know how to write English. Most of the other allegations concerned her disability. The EEOC issued plaintiff a Right to Sue letter the same day. Plaintiff returned to work on August 15, 2025, and was immediately terminated.

**DISCUSSION**

## I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for

summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson, 477 U.S. at 256.

"*Pro se* litigants are afforded 'special solicitude' on motions for summary judgment." Henderson v. Alvarez, No. 17-cv-3977, 2020 WL 2571013, at *6 (S.D.N.Y. May 21, 2020) (quoting Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988)); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). However, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman, 470 F.3d at 477 (2d Cir. 2006) (internal quotation marks and citation omitted); see also Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read *pro se* pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

## II. Hostile Work Environment Under Title VII

Title VII defines a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). The plaintiff must show that "the complained of conduct: (1) is objectively severe or pervasive – that is, ... creates

an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristics or protected activity." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23).

The amended complaint in this lawsuit alleged that for fourteen straight months, Mendez made disparaging comments to plaintiff about Dominicans. It was based on these allegations that plaintiff's hostile work environment claims survived dismissal. However, the parties obtained plaintiff's deposition testimony through discovery, and it directly refutes these allegations.[5] Specifically, plaintiff admitted that:

- She never heard Mendez mock her accent, and no one ever told her that Mendez mocked her accent;
- She never heard Mendez say that "Dominican employees do not communicate properly" or that "Dominican employees make too many mistakes," or make any of the offensive statements about Dominicans that are referenced in the amended complaint;
- Outside of the October 11, 2023 incident, Mendez never told her that she could not write or speak English;
- Mendez did not reference plaintiff's national origin during the October 11, 2023 incident.
- Mendez did not exclude her from meetings; and
- Mendez did not harass her due to her accent or national origin.

[5] Although plaintiff is now *pro se*, she was represented by former counsel at her deposition.

These admissions are fatal to plaintiff's hostile work environment claim because there exists nothing in the record which would otherwise substantiate it. That plaintiff was excluded from meetings or criticized for poor performance does not constitute a hostile work environment, especially when there is no evidence that such treatment resulted from nationality-based animosity. See Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (finding that plaintiff's allegations were "generally quite minor," and were insufficient to meet the severe or pervasive standard, where she alleged that "defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

The only evidence that plaintiff offers to support her hostile work environment claim is that on October 11, 2023, Mendez told her that she could not write or speak English. The incident may have embarrassed plaintiff, but it was not severe – and of course, it being an isolated incident, it also was not pervasive. Moreover, there is no evidence that Mendez's comments, however embarrassing, had any relation whatsoever to plaintiff's national origin.

Therefore, the Court grants SCA's motion for summary judgment on plaintiff's Title VII hostile work environment claim.

## III. Retaliation Under Title VII

The McDonnell-Douglas burden-shifting framework applies to retaliation claims brought pursuant to Title VII. See Edelman v. NYU Langone Health Sys., 141 F.4th 28, 45 (2d Cir. 2025). Thus, plaintiff must first make out a prima facie case of retaliation by demonstrating that (1) she engaged in protected activity; (2) defendant was aware of that activity; (3) she was subjected to an adverse action; and (4) there was a causal connection between the protected

activity and the adverse action. Id. (citing Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d Cir. 2015)).

As established in the Court's Memorandum Decision and Order on SCA's motion to dismiss, the only protected activity available for plaintiff's retaliation claim is her EEOC charge, which she filed while on leave in the month before her termination.[6] At the dismissal stage, it was enough that the termination happened close in time to the EEOC complaint. See Polanco v. New York City Sch. Constr. Auth., No. 25-cv-5815, 2026 WL 575539, at *5 (E.D.N.Y. Mar. 2, 2026) (noting that causation may be established indirectly through close temporal proximity).

On summary judgment, plaintiff argues that she filed her EEOC charge on May 16, 2025, and that SCA learned of it on May 21, 2025 – contrary to her position in her amended complaint, which was that she filed her EEOC charge on July 24, 2025. For purposes of the motion, the Court will deem May 21, 2025 as the date on which plaintiff engaged in protected activity. That means that there was a three-month gap between plaintiff's protected activity and her termination. Three months is just within the outermost limit for establishing causation based on temporal proximity. See Gehlaut v. N.Y.C. Dep't of Educ., No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025); Abromavage v. Deutsche Bank Sec. Inc., No. 18-cv-6621, 2021 WL 1061596, at *6 (S.D.N.Y. Mar. 19, 2021), aff'd, No. 21-668, 2022 WL 4360950 (2d Cir. Sept. 21, 2022).

[6]The complaint identified only two purportedly protected activities: a July 2024 charge with SCA's EEO (which the Court dismissed as a basis for plaintiff's retaliation claims) and a July 2025 charge with the EEOC. However, as set forth *supra*, discovery revealed that plaintiff made a couple of other complaints alleging discrimination: one in January 2024 to Human Resources and another to SCA's EEO in April 2025. Plaintiff never sought to amend the complaint in this lawsuit to allege that these complaints were protected activities. Moreover, plaintiff does not presently argue that these complaints were protected activities. Therefore, plaintiff's retaliation claim will remain confined to the EEOC charge.

However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001). The Slattery rule undoubtedly governs this case.

Before plaintiff filed her EEOC charge, she was placed on a twice-extended PIP for worsening performance and was warned that failure to meet the PIP's requirements could result in her termination. She was then notified throughout May 2025 that she was not fulfilling the PIP's requirements; indeed, she admitted as much to Mendez. It was after all of this that plaintiff filed her EEOC charge. This cuts off any causal connection between the EEOC charge and her termination. See Wright v. N.Y.C. Off-Track Betting Corp., No. 05-cv-9790, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory."); Hunter v. St. Francis Hosp., 281 F. Supp. 2d 534, 547 (E.D.N.Y. 2003) (no causation where poor performance evaluations and disciplinary record were consistent both before and after the plaintiff engaged in protected activity). Plaintiff's EEOC charge could not insulate her from her imminent performance-related termination.

Because plaintiff's retaliation claim fails at the *prima facie* stage, the Court need not evaluate the second and third McDonnell Douglas steps: that is, whether SCA had "legitimate reasons" for terminating plaintiff, or whether those reasons were mere pretext. See Edelman 141 F.4th at 45. However, even if plaintiff established causation, her retaliation claim would fail for lack of pretext.

SCA easily satisfies its burden at step two of the McDonnell Douglas test. SCA's non-retaliatory reasons for terminating plaintiff are obvious: plaintiff's performance was declining and she did not fulfill the PIP's requirements despite receiving two extensions.

Plaintiff, however, cannot satisfy her burden at step three of the McDonnell Douglas test. "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013). And without temporal proximity (and this is setting aside the Slattery problem), plaintiff has absolutely nothing connecting her termination to her EEOC charge. There is no evidence whatsoever that SCA mistreated plaintiff in any way based on any of her complaints. More fundamentally, there is no evidence that SCA would not have fired plaintiff "but for" or in the absence of plaintiff's EEOC charge, as there are no "weaknesses, implausibilities, inconsistencies, or contradictions in [SCA's] proffered legitimate, nonretaliatory reasons for its action." See id. at 845-46.

Thus, the Court grants summary judgment to SCA on plaintiff's Title VII retaliation claim.

## IV. NYSHRL and NYCHRL Claims

Having dismissed all of plaintiff's federal claims over which the Court has original jurisdiction, the question becomes whether to retain jurisdiction over plaintiff's NYSHRL and NYCHRL claims. A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "In determining whether to exercise supplemental jurisdiction, the relevant factors to be considered are judicial economy, convenience, fairness and comity." Thomas v. City of New York, 953 F. Supp. 2d 444, 462 (E.D.N.Y. 2013) (citing DiLaura v. Power Authority, 982 F.2d 73 (2d Cir. 1992)).

"These factors ... will usually point toward declining to exercise jurisdiction over the remaining state-law claims when all the federal law claims are eliminated before trial." Thomas, 953 F. Supp. 2d at 462 (internal quotation marks and citation omitted); accord Lambert v. Trump Int'l Hotel & Tower, 304 F. Supp. 3d 405, 428 (S.D.N.Y. 2018), aff'd, 615 F. App'x 49 (2d Cir. 2015)). Here, the Court has dismissed the only federal claims in this action.

Additionally, comity separately weighs in favor of declining to exercise supplemental jurisdiction. Pursuant to the 2019 amendments, the NYSHRL and NYCHRL are now aligned. See Edelman, 141 F.4th at 45 n.9; Wright v. White Plains Hosp. Med. Ctr., 237 A.D.3d 1143, 1145, 232 N.Y.S.3d 594, 594 (2nd Dep't 2025); see also Allen v. City of New York, No. 24-cv-2589, 2025 WL 3152723, at *3 (2d Cir. Nov. 12, 2025) (summary order) (relying on Wright). However, federal and state courts alike have not caught up with this change in law, and the New York Court of Appeals has yet to settle the matter. "[C]omity counsels against exercising jurisdiction over" a claim with "a lower threshold of proof than its federal counterparts[,] [that] has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it." Lambert, 304 F. Supp. 3d at 428-29.

The Court has dismissed all federal claims over which it had original jurisdiction, and none of the NYSHRL or NYCHRL claims that remain are governed under the same standards as their federal counterparts. Additionally, the NYSHRL and NYCHRL discrimination claims had no federal counterpart to begin with. Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's NYSHRL and NYCHRL claims, and these claims are dismissed without prejudice to refiling in state court.

**CONCLUSION**

For the foregoing reasons, summary judgment is granted to SCA on to plaintiff's Title VII claims for hostile work environment and retaliation. The Court dismisses the NYSHRL and NYCHRL claims (for hostile work environment, retaliation, and discrimination) without prejudice to refiling in state court. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 25, 2026